FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 06, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEE L.,[1] | No. 4:20-cv-05120-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 19, 20 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 19, 20. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 19, and grants Defendant's motion, ECF No. 20.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On November 8, 2017, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of June 22, 2016.[2] Tr. 15, 80, 167-75. The application was denied initially, and on reconsideration. Tr. 97-101, 105-08. Plaintiff appeared before an administrative law judge (ALJ) on August 28,

---

[2] Plaintiff previously applied for Title II and Title XVI benefits on January 3, 2014; the application was denied initially and on reconsideration, and resulted in a June 21, 2016 unfavorable decision from an ALJ. Tr. 51-69. Plaintiff appealed the decision to the Appeals Council and then to this Court; the appeal resulted in a judgment for the Commissioner of the Social Security Administration. *See Lee L. v. Comm'r of Soc. Sec.*, No. 4:17-cv-05170-JTR (E.D. Wash. Feb. 12, 2019), ECF Nos. 17, 18.

2019. Tr. 28-50. On September 25, 2019, the ALJ denied Plaintiff's claim. Tr. 12-27.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 8, 2017. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: kidney disease, diabetes mellitus, hypertension, obesity, affective disorder, and anxiety disorder. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can never climb ladders, ropes or scaffolds, work at unprotected heights or in proximity to hazards. [Plaintiff] can perform work in which exposure to extreme heat, humidity and/or vibration is not present. In order to meet ordinary and reasonable employer expectations regarding attendance, production, and work place behavior, [Plaintiff] can understand, remember and carry out unskilled, routine and repetitive work that can be learned by demonstration, and in which tasks to be performed are predetermined by the employer.

Tr. 21.

At step four, the ALJ found Plaintiff is able to perform her past relevant work as a hand sander. Tr. 22. The ALJ did not make an alternative step five finding. Therefore, the ALJ concluded Plaintiff was not under a disability, as

defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

On May 26, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly applied *Chavez*;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ conducted a proper step-two analysis; and

4. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 19 at 5.

## DISCUSSION

**A. *Chavez***

Plaintiff contends the ALJ erred in his application of *Chavez*. ECF No. 19 at 8-10. "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v.*

ORDER - 8

*Sec'y of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)).  Under

the doctrine of res judicata, a prior, final determination of nondisability bars

relitigation of that claim through the date of the prior decision.  *Lester v. Chater*,

81 F.3d 821, 827 (9th Cir. 1995).  Furthermore, in the Ninth Circuit, a prior, final

determination of nondisability "create[s] a presumption that [the claimant]

continued to be able to work after that date."  *Id*. (citation and internal quotation

marks omitted).[3]  "However, the authority to apply res judicata to the period

*subsequent* to a prior determination is much more limited."  *Id.*(emphasis in

original).  "The claimant, in order to overcome the presumption of continuing

nondisability arising from the first administrative law judge's findings of

nondisability, must prove 'changed circumstances' indicating a greater disability."

*Chavez*, 844 F.2d at 693 (citation omitted).  Examples of changed circumstances

include "[a]n increase in the severity of the claimant's impairment," "a change in

the claimant's age category," and a new issue raised by the claimant, "such as the

_____

[3] Acquiescence Ruling (AR) 97-4(9) explains how *Chavez* differs from the Social

Security Administration's (SSA) interpretation of Social Security policy requiring

de novo review of claims for unadjudicated periods.  The SSA applies the *Chavez*

presumption only as to claimants residing in the Ninth Circuit.  AR 97-4(9),

available at 1997 WL 742758 at *3.

ORDER - 9

existence of an impairment not considered in the previous application." *Lester*, 81 F.3d at 827-28 (citations omitted); *see also* Acquiescence Ruling (AR) 97-4(9), available at 1997 WL 742758 at *3.

On June 21, 2016, a prior ALJ found Plaintiff was not disabled. Tr. 51-69. The ALJ in the present decision found Plaintiff rebutted the presumption of continuing nondisability, because Plaintiff changed age categories and alleged an impairment that was not previously considered. Tr. 16. However, the ALJ found the newly submitted evidence was not material to the outcome of the case, and as such the ALJ gave effect to the prior decisions findings of Plaintiff's RFC, education, and work experience. *Id.* An adjudicator must adopt a finding which was made in a final decision by an ALJ or the Appeals Council under the same title of the Act unless there is new and material evidence related to the finding. HALLEX 1-5-4-60.

The ALJ noted Plaintiff alleged only one new impairment that was not alleged in the prior application. Tr. 18. The ALJ found that while Plaintiff was diagnosed with breast cancer, the impairment did not meet the twelve-month durational requirement and thus the evidence related to Plaintiff's breast cancer diagnosis was not material to the decision. *Id.* The ALJ further found that Plaintiff did not demonstrate a material change in any of the conditions that existed at the

time of the prior decision, including kidney disease, diabetes, hypertension, obesity, affective disorder, and anxiety disorder.  Tr. 21.

First, Plaintiff contends the ALJ erred in giving effect to the prior RFC, because Plaintiff was diagnosed with breast cancer during the unadjudicated period.  ECF No. 19 at 8-9.  However, the ALJ reasonably found Plaintiff's breast cancer did not meet the duration requirement, and was therefore not a severe impairment.  Plaintiff was diagnosed with breast cancer in August 2017, and she underwent a lumpectomy in September 2017, followed with chemotherapy that concluded by March 2018.  Tr. 18.  In September 2018, a mammogram indicated there was no evidence of malignancy.  *Id.*  As such, the ALJ's finding that Plaintiff's breast cancer was not a severe impairment, because it did not meet the duration requirement, is supported by substantial evidence.  Plaintiff does not argue that she demonstrated a material change in any of her other conditions.  As Plaintiff did not present new and material evidence related to her RFC, the ALJ did not error in giving effect to the prior RFC.

Next, Plaintiff argues the ALJ erred in giving effect to the prior findings regarding Plaintiff's employment history.  ECF No. 19 at 9.  Plaintiff's work as a hand sander was found to be a light unskilled job.  Tr. 22, 64.  Plaintiff argues her past work has been repeatedly mischaracterized as a hand sander, when Plaintiff actually worked as a machine sander, a medium exertion job.  ECF No. 19 at 10.

However, Plaintiff previously argued to this Court that her work was incorrectly labeled as a light hand sander position and should have been labeled a medium machine sander position, and this Court found there was not substantial evidence to support Plaintiff's argument. *See Lee L.*, No. 4:17-cv-05170-JTR (ECF No. 18 at 13-15). This Court found that while the ALJ erred in concluding that Plaintiff performed the sander job at a light level, the error was harmless as the vocational expert testified the position is generally performed at a light level. *Id.* The law of the case doctrine applies in the Social Security context. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Under the law of the case doctrine, a court is precluded from revisiting issues which have been decided—either explicitly or implicitly—in a previous decision of the same court or a higher court. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). The doctrine of the law of the case "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567.

The issue Plaintiff raises regarding her hand sander job was explicitly decided in the previous decision by this Court. Plaintiff now argues there is new evidence that her past work as a hand sander was medium exertion because she testified that she lifted up to 50 pounds in the position and she testified she used an electric sander. ECF No. 19 at 9. Plaintiff submitted an incomplete work history

report, in which she did not describe her sander position, for the present application. Tr. 201-22. Plaintiff wrote "you should have all my work history it hasn't changed." Tr. 222. As such, Plaintiff conceded that the previously submitted work history was accurate. While Plaintiff argues her testimony that the job required lifting up to 50 pounds is new and material evidence, Plaintiff gave identical testimony at the prior hearing and completed a work history form stating the work required lifting 50 pounds. *See Lee L.*, No. 4:17-cv-05170-JTR (ECF No. 11-6 at 37, ECF No. 18 at 13-14). At the prior hearing, Plaintiff's counsel asked the expert if a different DOT label would be more appropriate because Plaintiff lifted 50 pounds in the role, and the expert testified that the light DOT description was the appropriate job label, although Plaintiff performed the work at a medium level. Tr. 63. Plaintiff also contends there is new evidence as she testified her hand numbness makes it difficult to use a sander. ECF No. 19 at 9. However, the ALJ's finding that Plaintiff's neuropathy was non-severe is supported by substantial evidence for the reasons discussed *infra*.

Plaintiff also argues there is now new evidence she used an electric sander and did not sand by hand. ECF No. 21 at 2-3. However, the evidence in the prior case included a work history form in which Plaintiff reported using machines, tools, or equipment, and she described using equipment, including a sprayer. *See Lee L.*, No. 4:17-cv-05170-JTR (ECF No. 11-6 at 37). Further, Plaintiff did not

ORDER - 13

specifically testify that she used an electric sander in her prior job; rather, Plaintiff testified she lives with her sister and has tried to show her how to use an electric sander, and the vibration makes it hard to hold the sander. Tr. 40. As such, the evidence in this case is not materially different from the prior case and the Court declines to relitigate this issue. Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of opinions of Ying Zhuo, M.D., and Debra Baylor, M.D. ECF No. 19 at 11-14.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment,

frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). Supportability and consistency are explained in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how

the other factors were considered.  20 C.F.R. § 416.920c(b)(2).[4]  However, when

---

[4] The parties disagree over whether Ninth Circuit case law continues to be

controlling in light of the amended regulations.  ECF No. 19 at 10-14; ECF No. 20

at 7; ECF No. 21 at 6-10.  The Court finds resolution of this question unnecessary

to the disposition of this case.  "It remains to be seen whether the new regulations

will meaningfully change how the Ninth Circuit determines the adequacy of [an]

ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ

provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis

of medical opinions, or some variation of those standards." *Gary T. v. Saul*, No.

EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29,

2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3

(W.D. Wash. Apr. 9, 2020)). "Nevertheless, the Court is mindful that it must defer

to the new regulations, even where they conflict with prior judicial precedent,

unless the prior judicial construction 'follows from the unambiguous terms of the

statute and thus leaves no room for agency discretion.'" *Gary T.,* at *3 (citing *Nat'l

Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82

(2005);  *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations

two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(3).

### 1. Dr. Zhuo

On November 17, 2017, Dr. Zhuo, Plaintiff's treating oncologist, rendered an opinion on Plaintiff's functioning. Tr. 524-26. Dr. Zhuo diagnosed Plaintiff with breast cancer, which required treatment with chemotherapy. Tr. 525. Dr. Zhuo opined Plaintiff's breast cancer, and the treatment of her condition, cause severe limitations in Plaintiff's ability to lift, carry, handle, push, pull, reach, stoop, and crouch. *Id.* Dr. Zhuo further opined Plaintiff was unable to meet the demands of even sedentary work, and opined the limitations were expected to last three months. Tr. 526. The ALJ found Dr. Zhuo's opinion was supported by Dr. Zhuo's relationship with Plaintiff, and consistent with the ALJ's finding that Plaintiff's breast cancer was non-severe because it did not meet the durational requirement. Tr. 21-22.

_____

at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'").

The ALJ noted he was persuaded the opinion regarding Plaintiff's limitations was only an assessment of Plaintiff's short-term functioning and not Plaintiff's longitudinal functioning. Tr. 22. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").

Plaintiff argues the ALJ erred in finding Dr. Zhuo's opinion related only to short-term functioning, because Dr. Zhuo opined Plaintiff was unable to work due to the side effects of treatment. ECF No. 19 at 12 (citing Tr. 525). However, Dr. Zhuo specifically opined the limitations were expected to last three months. Tr. 526. Plaintiff further argues her side effects of treatment meet the duration requirement. ECF No. 19 at 12-13. While receiving chemotherapy in December 2017, Plaintiff was experiencing Grade I peripheral neuropathy. *Id.* (citing Tr. 444). In January 2018, Plaintiff was noted as having only mild, intermittent numbness/tingling in her hands. Tr. 447. Plaintiff notes she experience fatigue, back pain, and dizziness in June 2018, lists her other medical conditions, and argues she testified she had frequent swelling in her legs which can be a side effect

ORDER - 18

of treatment, but does not cite to objective evidence that she had ongoing side effects from treatment that lasted 12 months or longer. ECF No. 19 at 12-13. The ALJ noted there were not ongoing reports of neuropathy after Plaintiff's chemotherapy ended, Plaintiff's neurological examinations and reports were generally negative, and Plaintiff did not report edema nor fatigue after she completed chemotherapy. Tr. 18 (citing, e.g., Tr. 426, 434, 589, 606, 614). The ALJ's finding that Dr. Zhuo's opinion pertained only to short-term limitations is supported by substantial evidence.

### 2. Dr. Baylor

On March 22, 2018, Dr. Baylor, a State agency medical consultant, rendered an opinion on Plaintiff's functioning. Tr. 89-91. Dr. Baylor opined that by August 7, 2018, Plaintiff would be able to perform light work in which she lifted/carried 20 pounds occasionally and 10 pounds frequently, stood/walked up to six hours in a day and sat for up to six hours in a day, occasionally climbed ladders/ropes/scaffolds, avoided even moderate exposure to extreme heat and hazards, and avoided all exposure to humidity and vibration. Tr. 90-91. The ALJ found Dr. Baylor's opinion was supported by the evidence and generally consistent with the prior ALJ's RFC finding. Tr. 22. The ALJ noted that there were minor deviations between Dr. Baylor's opinion and the RFC, and stated that to the extent the opinion is consistent with the RFC, he finds it persuasive. *Id.*

While Dr. Baylor opined Plaintiff must avoid any exposure to vibration, Tr. 90, the ALJ limited Plaintiff only to avoiding extreme vibration, Tr. 21. The ALJ did not give any explanation for not including the vibration limitation in the RFC. Defendant argues Dr. Baylor's opinion related to short-term limitations that do not meet the durational requirement, because Plaintiff's symptoms resolved in less than 12 months. ECF No. 20 at 8. Although the ALJ did not explicitly state portions of Dr. Baylor's opinion, including the vibration limitation, were rejected because they did not meet the duration requirement, any error is harmless because the ALJ explained elsewhere in the decision why the prior RFC was given effect. *See Molina,* 674 F.3d at 1115.

The ALJ found there was not new and material evidence that demonstrated a decline in Plaintiff's functioning since the prior decision. Tr. 21. The ALJ found Plaintiff's breast cancer and neuropathy were non-severe conditions because they did not meet the duration requirement. Tr. 18, 21. While Dr. Baylor opined that Plaintiff had severe neuropathy, and projected Plaintiff would be limited to no vibration one year after the onset date, Tr. 90-91, the ALJ found Plaintiff's neuropathy was non-severe, Tr. 18. The ALJ noted Plaintiff did not have ongoing complaints of neuropathy. *Id.* Plaintiff points to Dr. Baylor's statement that Plaintiff had severe neuropathy, Tr. 89-91, but does not point to objective evidence of ongoing limitations caused by neuropathy. Rather, the evidence cited by

Plaintiff consists entirely of Plaintiff's hearing testimony in which she reported neuropathy symptoms, and a medical record in which Plaintiff indicated she had only mild intermittent numbness/tingling in her hands. ECF No. 19 at 4-9. Further, even if the ALJ erred in rejecting Dr. Baylor's opinion that Plaintiff is limited to no exposure to vibration, Plaintiff has not demonstrated that any error is harmful. The ALJ found Plaintiff capable of performing her past work as a hand sander, which require no exposure to vibration. *See* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupation Titles, U.S. Department of Labor, DOT 761.687-010, 1991 WL 680441. Plaintiff is not entitled to remand on these grounds.

**C. Step Two**

Plaintiff contends the ALJ erred at step two by failing to identify her neuropathy as a severe impairment. ECF No. 19 at 14-15. At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. § 416.921. In other words, the claimant must

establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion. 20 C.F.R. § 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.922(a); SSR 85-28.[5]

---

[5] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 22

1    Step two is "a de minimus screening device [used] to dispose of groundless

2    claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying

3    our normal standard of review to the requirements of step two, [the Court] must

4    determine whether the ALJ had substantial evidence to find that the medical

5    evidence clearly established that [Plaintiff] did not have a medically severe

6    impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

7    (9th Cir. 2005).

8        The ALJ found Plaintiff's neuropathy was not a severe impairment. Tr. 18.

9    The ALJ noted Plaintiff reported only mild, intermittent neuropathy in her hands at

10   the end of a chemotherapy cycle. *Id.* (citing Tr. 441). Plaintiff did not have

11   ongoing complaints nor treatment for neuropathy. Tr. 18. Medical records

12   indicate Plaintiff had "mild neuropathy" and she would be closely monitored for

13   further neuropathy symptoms. Tr. 407. Plaintiff reported no numbness or tingling

14   at multiple appointments, Tr. 366, 381, 426, 434, although she reported numbness

15   at some appointments, Tr. 441, 447. In her function report, Plaintiff reported no

16   difficulty using her hands. Tr. 228. Plaintiff does not point to any objective

17   evidence of limitations caused by her neuropathy that were not accounted for in the

18   RFC. As such, Plaintiff has not demonstrated a harmful error. Plaintiff is not

19   entitled to remand on these grounds.

20

**D. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 19 at 15-17. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that an analysis of Plaintiff's symptom claims was unnecessary because the evidence supplied by Plaintiff was not material to the determination and thus the prior RFC was adopted. Tr. 21. Plaintiff contends the

ALJ rejected Plaintiff's symptom claims as inconsistent with the objective medical evidence. ECF No. 19 at 16. However, the ALJ was not required to analyze Plaintiff's symptom claims. A Plaintiff's symptom allegations are a subordinate finding to other findings, including the RFC. *See* HALLEX 1-5-4-60. As the ALJ adopted the prior decision's RFC, the ALJ was not required to analyze Plaintiff's symptom claims. *See id.* Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED July 6, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 26